

# LAW OFFICES OF WILLIAM CAFARO

*William Cafaro, Esq.*
ADMITTED IN NY, CA, MD & TX
Email: *bcafaro@cafaroesq.com*

*Amit Kumar, Esq.*
*Managing Attorney*
ADMITTED IN NY & NJ
Email: *akumar@cafaroesq.com*

108 West 39th Street, Suite 602
New York, New York 10018
Telephone: 212.583.7400
Facsimile: 212.583.7401
*www.cafaroesq.com*

*Louis M. Leon, Esq.*
*Associate*
ADMITTED IN NY
Email: *lleon@cafaroesq.com*

*Andrew S. Buzin, Esq.*
*Of Counsel*
ADMITTED IN NY, FL & DC

December 31, 2018

*Via ECF*
Hon. Sanket J. Bulsara, U.S.M.J
United States District Court
Eastern District of New York
225 Cadman Plaza East, Chambers 304N
Brooklyn, NY 11201

        Re: Edgardo Najera v. Double Green Produce, Inc., et al
           Case No.: 18-cv-01881

Your Honor:

  This is a joint request for approval[1] of the Settlement Agreement[2] in the above Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action. *See, Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The fully executed Settlement and Release Agreement ("Agreement") appended as Exhibit "1".

## I. Background and Claims

  The Plaintiff Edgardo Najera ("Mr. Najera" or "Plaintiff") filed his complaint on March 28, 2018, seeking damages for defendants' alleged violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). According to the Plaintiff, the Defendants owned and operated a wholesale distributor of fruits and vegetables. The Plaintiff worked for the Defendants' as a warehouse worker whose duties included stocking merchandise, packing merchandise and loading and unloading trucks. According to his best recollections he began working for the Defendants from August 15, 2015 until on or about July 21, 2017. According to his best recollections, throughout his employment he worked six days per week from Monday through Saturday. On Mondays, Tuesdays, and Saturdays he worked from 5:30AM until 5:00PM. On Wednesdays he worked 5:30AM until 4:00PM. On Thursdays and Fridays, he worked from 5:30 AM until 3:00 PM. Moreover, according to his best recollections he was paid a salary of

---

[1] Defendants only join this request for sections I, II, and II of this request for approval and take no position on Part IV of this letter which deals directly with Plaintiff's counsel's request for attorneys' fees and costs.
[2] This letter is tendered pursuant to Rule 408 of the Federal Rules of Evidence and § 4547 of the C.P.L.R., with the express understanding that no part hereof or any document submitted herewith may be utilized for any purpose if the Agreement is not approved and litigation must go forward, nor may any of the content or any related documents be used for any purpose except to enforce the Agreement.

$500.00 per week. Also, according to his best recollections he did not receive an annual wage notice when he first began working for the Defendants, and his wage statements were inaccurate. Given these claims, Mr. Najera filed a complaint for unpaid minimum wages, overtime, spread of hours and statutory record keeping violations under the FLSA and NYLL. Moreover, Mr. Najera claimed that the Defendants systematically failed to pay himself and those similarly situated.

Plaintiff has not moved for collective action or class action certification in this action.

The Defendants vigorously disputed the Plaintiff's claims that he is owed any money or that they systematically failed to pay the Plaintiff or those similarly situated in accordance with the law. The Defendants challenged the number of hours the Plaintiff claimed that he worked and whether there were wage notices. The defendants also raised various defenses, including that some or all of Plaintiff's claims were barred by the motor carrier exemption.

Since the filing of this and the related action, the parties have engaged in arm's length settlement discussions. To that end, Defendants provided the Plaintiff's counsel with voluminous records, both in connection with the wages paid to Plaintiff, as well as in terms of the applicability of the motor carrier exemption. Moreover, the Parties participated in a successful mediation with Robin H. Gise, through the EDNY Mediation panel on November 14, 2018. The result of that mediation session is the attached settlement agreement.

## II.    The Settlement Reached Between the Parties

A spreadsheet showing a computation if the likely value of the Plaintiffs' claims is appended hereto as Exhibit "2". For the purposes of mediation only, the Plaintiff agreed to lower the number of hours he worked per week from 64 to 60. This was to take into account any meal breaks the Plaintiff may have taken and to take into account sick and personal days. Based on this assumption, the Plaintiff is allegedly owed $51,376.00 for his claim, exclusive of attorneys' fees and costs. This is broken down into $20,688.00 in unpaid wages, $20,688.00 in liquidated damages and $10,000.00 in statutory damages. *See*, *Id*. Therefore, with this settlement of $45,000.00 the Plaintiff is recovering of 88% of the value his claim and all his unpaid wages and record keeping violations and most of his owed liquidated damages. *See*, *Id*.

Plaintiff believes that the $45,000.00 settlement amount is a fair compromise to resolve this case without further litigation, and without subjecting both parties to the time and expense of more extensive discovery and ongoing litigation. While Plaintiff was confident that he would be able to challenge the Defendants' inferences successfully, Mr. Najera is uncomfortable testifying in a formal setting. If his testimony had been rejected by the trier of fact, his recovery could have been significantly minimized or eliminated. Moreover, each settling party is represented by counsel experienced in wage and hour practice.

The settlement agreement reflects a reasonable compromise of the disputed issues and any actual or potential claims in the totality of the circumstances. In addition, the parties believe that the certainty of settlement is better than the uncertain outcome of protracted litigation, and Plaintiff

prefers to receive their proceeds without the inevitable delay and significant risks that continued litigation would entail.

### III.     The Court Should Find the Proposed Settlement Fair and Reasonable

A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quoting *Crabtree v. Volkert, Inc*., No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013)). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div., 679 F.2d 1350, 1354 (11th Cir. 1982)*).

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky*, *supra* at 335.

*Plaintiff's Range of Possible Recovery*

As stated above, the proposed settlement represents 88% of the Plaintiff's claims and is certainly toward the higher end of the range of reasonableness of recovery, particularly after considering the obstacles Plaintiff faced. It will also enable Plaintiff to avoid anticipated burdens and risks in going forward.

If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the potential outcome. *Morris v. Affinity Health Plan*, 859 F.Supp.2d 611, 620 (S.D.N.Y. 2012). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiff…against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012). In light of the totality of the circumstances, the settlement represents a reasonable compromise of the *bona fide* disputes in this matter. The settlement eliminates risks and ensures that the plaintiff will recover most of his damages.

*Whether the Settlement Agreement is the Product of Arm's-Length Bargaining*

A "presumption of fairness, adequacy and reasonableness may attach to a…settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted).  The Parties engaged in discovery and participated in arm's length settlement discussions before a neutral mediator in order to arrive at this settlement. Because the settlement involves a clear and *bona fide* wage dispute in contested litigation, which was resolved through an arm's-length settlement process, it should be granted judicial approval.  Moreover, the agreement itself is limited to Plaintiff's wage and hour claims, does not contain a confidentiality provision, nor does it contain a non-disparagement clause.  *See, Barbecho v. M.A. Angeliades, Inc.*, 2017 U.S. Dist. LEXIS 48595, at *6 (S.D.N.Y. Mar. 30, 2017) (rejecting FLSA settlement containing a "general release that r[an] only in favor of defendants"); *Thallapaka v. Sheridan Hotel Assocs. LLC*, No. 15cv1321, 2015 U.S. Dist. LEXIS 117179, at *2-3 (S.D.N.Y. Aug. 17, 2015) ("[T]he overwhelming majority of courts reject the proposition that FLSA settlements can be confidential."); *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-cv-8187 (AJN), 2015 U.S. Dist. LEXIS 162243, at *8-9 (S.D.N.Y. Dec. 3, 2015) (rejecting a provision prohibiting plaintiffs from "mak[ing] disparaging or detrimental comments, statements or the like about Defendants").

*Possibility of Fraud or Collusion*

There is no possibility that this settlement was precipitated by reason of "overreaching" by the employer.  To the contrary, the settlement was the result of vigorous arm's-length negotiations before a mediator.  The Parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation.  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 CIV 10240, 2007 WL 2230177, at *4 (S.D.N.Y July 27, 2007).  Here, the settlement was reached after the Parties were able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case.  At all times, negotiations took place between experienced counsel and were at arm's-length, through an experienced mediator. Similarly, the Plaintiff stopped working for the Defendants long before this litigation commenced, so there was no opportunity for direct collusion between the adverse parties. Thus, there was no fraud or collusion between counsel and as such, the Settlement Agreement should be approved.

**IV.   Plaintiff's Counsel is Entitled to a Reasonable Fee of One-Third of the Settlement Amount**

Although the undersigned fully recognizes the Court's prerogative to evaluate the attorneys' fee arrangement in a FLSA matter, not all courts in this circuit have read the *Cheeks* decision to require this assessment.  *See Gutierrez v. 352 East 86th St. Rest. Inc.*, 2016 U.S. Dist. LEXIS 23967, *3 -4 n. 1 (S.D.N.Y Feb. 19, 2016) ("I do not understand the FLSA to regulate the relationship between the employee as plaintiff and his counsel or to alter the freedom of contract between a client and his attorney"). The foregoing notwithstanding, the undersigned submits as follows in support of the requested fee:

Plaintiff's counsel is entitled to reasonable attorneys' fees to compensate for work in recovering withheld compensation in this action. I have personally expended 30.3 hours in the prosecution of this case, (Exhibit "3", Attorney Kumar's time records). My paralegal, Nicholas Duran, Jr. has expended 10.3 hours, (Exhibit "4", Duran Time Records).

"To determine the quality of representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y Jan. 31, 2007) (*citing In re Global Crossing and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)).

I have been an associate with the Law Offices of William Cafaro since 2013. I earned my B.B.A. with dual concentrations in Finance and Computer Information Systems, *cum laude*, from George Washington University in 2005 and a J.D from Hofstra University School of Law in 2012. While in law school, I worked as a law clerk for several employment law firms of note, including Schwartz & Perry, LLP and Outten & Golden LLP. Also, while in law school, I was a judicial intern for United States Magistrate Judge Ronald L. Ellis of the Southern District of New York. I was admitted to practice in the state courts of New York and New Jersey in 2013 and later that same year I was admitted to practice before the Southern and Eastern Districts of New York. Since being admitted in 2013, I have focused primarily on plaintiffs' employment matters in both wage and hour matters as well as discrimination actions. Further, while working at the Law Offices of William Cafaro, I have had the opportunity to second chair several successful wage and hour actions through trial. *See, e.g. Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, 14-cv-5269 (ARR) (JO), 2016 U.S. Dist. LEXIS 127425 (E.D.N.Y Sept. 19, 2016).

I also prevailed in a wage and hour case which I tried in the Southern District of New York, *Cajamarca v. Yerina Restaurant Corp., et al.*, No. 15-cv-08244 (GHW). I have also been selected to the New York Super Lawyer's Rising Star List for the years 2017 and 2018. Moreover, I am a member of the South Asian Bar Association of New York, where I sit on the Public Interest Committee as well as the National Employment Lawyers Association – New York Chapter. My normal hourly rate for wage and hour actions is $275.00 per hour and the Plaintiff is requesting this rate for his work in this case. This rate is reasonable based on my experience. *See*, *Solnin v. Sun Life & Health Ins. Co.*, No. 08-cv-2759 (DRH)(AYS), 2018 U.S. Dist. LEXIS 168047, at *9 (E.D.N.Y. Sep. 28, 2018) (awarding mid-level associate with 5 years of experience a rate of $275 and noting proper rate for senior associates is up to $325 per hour and for experienced partners is between $300-$450 per hour in this district); *Remache v. Mac Hudson Grp.*, No. 14 CV 3118 (AMD)(RML), 2018 U.S. Dist. LEXIS 154099, at *63 (E.D.N.Y. Sep. 7, 2018) (In a FLSA default action awarding an hourly rate of $275.00 for associates with 4-9 years of experience).

Nicholas Duran is a paralegal with the Law Offices of William Cafaro. He graduated from John Jay College of Criminal Justice, where he received a B.S. in Criminal Justice with a minor in Law in 2009. Concurrent with his attendance at John Jay College of Criminal Justice, Mr. Duran graduated from LaGuardia Community College in 2007, where is received an A.A.S degree in Paralegal Studies. Mr. Duran began working for the Law Offices of William Cafaro in 2007 and is fluent in both English and Spanish. Mr. Duran provided paralegal, support and translation services throughout the duration of the litigation. Mr. Duran's normal hourly rate is $125.00 and

Plaintiffs are requesting same for his work on this action. *See Cajamarca v. Yerina Rest. Corp.*, No. 15-cv-8244, 2016 U.S. Dist. LEXIS 102686 (S.D.N.Y Aug. 4, 2016) (awarding Mr. Duran his normal hourly rate of $125 per hour).

At the requested rates, the total lodestar is $9,620.00. Under the retainer agreement, Plaintiff's counsel is entitled to receive Fifteen Thousand Dollars and Zero Cents ($15,000.00) from the proposed settlement in attorneys' fees and Nine Hundred Eighty Dollars and Forty-Two Cents ($980.42) in reasonable out of pocket disbursements incurred by Plaintiff's counsel and ordinarily charged to the file. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). These costs are for the following:

| Company | Description | Amount |
|---|---|---|
| EDNY – Clerk | Filing Fee | $400.00 |
| Servco | Service of process on the Corporation through the Secretary of State | $67.00 |
| Gotham Process | Service of Process on the individual Defendants | $200.00 |
| JAMS | Mediation Fee | $300.00 |
| Uber | Travel to mediation due to issues with subway | $13.42 |

Regarding the above costs, the Court is respectfully referred to Docket Entry ("DE") 1 (showing that the filing fee of $400 to the EDNY Clerk); Ex "5" (invoice from Servco for $67.00 for service of process on this action); Ex. "6" (invoice from Gotham Process for service of process on this case for a total of $200.00); and Ex "7" (invoice from JAMS for the Court annexed mediation). Regarding the Uber ride my client and I took to the mediation, normally in order to save on litigation costs we would have taken the subway. However, due to signal issues on the 2/3 line that day, the subway stopped working around Chambers. Rather than cancel the mediation or be extraordinarily late, the Plaintiff and I decided to take an Uber after unsuccessfully trying to hail a cab. As such, it is requested the Court approve this cost as well. A copy of the Uber travel receipt is appended hereto as Exhibit "8". Each of these costs are reasonable out of pocket disbursements which are normally charged to the file.

Where, like here, the lodestar is less than the contingency fee requested, after reviewing the lodestar the Court generally also applies a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved. *See*, *In re Platinum & Palladium Commodities Litig.*, No. 10-CV-3617, 2015 U.S. Dist. LEXIS 98691 (S.D.N.Y. July 7, 2015). Courts have awarded lodestars up to eight (8) times the lodestar and in some cases they have awarded multipliers that are even higher. See, *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013) (collecting cases); *see also*, *Riveras, et al v. Bilboa Rest. Corp., et al.*, E.D.N.Y. Case. No. 17-cv-04430, DE 74 (Memorandum and Order approving a lodestar multiplier of 6.7). Here, the multiplier requested is approximately 1.56 which is well within the range granted by courts in this circuit.

While the multiplier represents a greater recovery than Plaintiff's counsel's lodestar, this should not result in penalizing counsel for achieving an early settlement. *See Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, at *22-23 (S.D.N.Y. Sep. 23, 2014) (citing *Wal-Mart Stores*, 396 F.3d at 121 ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits.")); *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050 n.5 (9th Cir. 2002) (noting that "the lodestar method does not reward early settlement" and that "counsel should [not] necessarily receive a lesser fee for settling a case quickly").

Lastly, the Court should review the public policy considerations concerning the manner in which attorneys' fees are reviewed. Since a reasonable value of the case had already been obtained in a settlement, the only purpose of continuing would have been to build up attorneys' fees. This would forestall a resolution that could have been achieved earlier. While the undersigned would never continue with a case to build up fees beyond the point where a reasonable settlement is made, other attorneys who do wage and hour litigation very well might. Reducing attorney's fees in single plaintiff FLSA cases below one third would disincentivize early resolution of these cases. As FLSA cases have become a significant portion of the federal docket, the efficient and early resolution of these cases is in the best interests of public policy.

## V.    Conclusion

For the reasons set forth above the Parties jointly request that the Court approve the settlement as reflected in the Agreement. Plaintiff's counsel further requests that the Court approve the attorney's fee award reflected in the Agreement as fair and reasonable.

Respectfully submitted,
LAW OFFICES OF WILLIAM CAFARO

_____
By Amit Kumar, Esq. (AK 0822)
*Attorneys for Plaintiff*
108 West 39th Street, Suite 602
New York, New York 10018
(212) 583-7400
Akumar@CafaroEsq.com

cc:
Defense Counsel (via ECF)